# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> JAVIER MORALES-LANDA, <br><br> Defendant. | Case No. 13-CR-4313-BTM <br><br> **ORDER DENYING DEFENDANT'S MOTION TO DISMISS THE INDICTMENT** |

Defendant Javier Morales-Landa has filed a motion to dismiss the indictment. For the reasons set forth herein, the Court DENIES the motion.

## I. BACKGROUND

Defendant Javier Morales-Landa ("Defendant") is a citizen of Mexico without legal status in the United States. On March 22, 2010, he was charged with attempted sexual abuse of a child in violation of Utah Code section 76-5-402.1. (Gov. Ex. 2.) On the same day, he pled guilty to attempted sexual abuse of a child, a felony in the third degree. (Gov. Ex. 3, Doc. 21-1). In his supporting statement, he admitted: "On 7/1/09 at 2547 Parkcrest Drive in Salt Lake County, I touched the breast of T.M. (a female younger than age 14) to arouse my sexual desire." (Id. at 3.)

On May 5, 2010, Defendant was served with a Notice of Intent to Issue a Final Administrative Removal Order, which included an allegation that his Utah conviction constituted an aggravated felony under 8 U.S.C. § 1101(a)(43)(A). (Def's Ex. D.,

Doc. 15-2.) Defendant acknowledged receipt of the Notice and did not contest the allegations therein. (Id.) The immigration officer accordingly concluded that he was convicted of an aggravated felony, and a final removal order issued the same day. (Def's Ex. E.) Defendant was removed to Mexico the next day.

On November 5, 2013, Defendant was arrested approximately 25 yards north of the Mexican border. On December 5, 2013, he was charged by information with Attempted-Re-Entry of a Removed Alien in violation of 8 U.S.C. § 1326. On January 22, 2014, he filed a motion to dismiss the information pursuant to 8 U.S.C. § 1326(d). Defendant contends that his removal was invalid because he was not really convicted of of an aggravated felony.[1] (Mot. at 5.) The Court held hearings on the motion on March 21 and April 11, 2014.

## II. LEGAL FRAMEWORK

### A. Collateral Attack Under 8 U.S.C. § 1326

"[A]ny alien who . . . has been . . . deported, or removed . . . and thereafter . . . enters, attempts to enter, or is at any time found in, the United States" absent express consent "shall be fined under Title 18, or imprisoned not more than 2 years, or both." 8 U.S.C. § 1326(a). An unlawfully present alien "whose removal was subsequent to a conviction for commission of an aggravated felony" is subject to a sentence of up to twenty years. Id. at § 1326(b)(2). Sexual abuse of a minor is an aggravated felony. Id. at 1101(a)(43)(A) An alien charged under § 1326 "may challenge the validity of the deportation order." Id. at § 1326(d). To advance such a "collateral attack," the defendant must demonstrate that (1) he exhausted all administrative remedies available to him to appeal his removal order; (2) the underlying removal proceedings improperly deprived him of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair. See, e.g., United States v. Ubaldo-Figueroa, 364

---

[1] Defendant's motion also posits that he was not provided an opportunity to contest the finding of an aggravated felony conviction, and that there was a failure to elicit a waiver of the right to counsel. (Mot. at 5.) The first argument, which appears to go only to the exhaustion requirement, is discussed *infra*. Defendant fails to develop the second argument. Therefore, the Court rejects it as conclusory and unsupported.

F.3d 1047, 1048 (9th Cir. 2004).  An underlying deportation order is "fundamentally unfair" if (1) the defendant's due process rights were violated by defects in his deportation proceeding, and (2) he suffered prejudice as a result.  Id.

An alien may not collaterally attack an underlying removal order if he validly waived the right to appeal that order.  United States v. Arrieta, 224 F.3d 1076, 1079 (9th Cir. 2000).  However, the exhaustion requirement of 8 U.S.C. § 1326(d) "cannot bar collateral review of a deportation proceeding when the waiver of right to an administrative appeal did not comport with due process."  United States v. Muro-Inclan, 249 F.3d 1180, 1183 (9th Cir. 2001).

Defendant argues that he is excused from the exhaustion requirement.  Although he received a form asking whether he challenged his removal, Defendant contends that the form did not provide sufficient notice and opportunity to contest the legal conclusion that a prior conviction constitutes an aggravated felony.  (Mot. at 3, 6.)  See Valdiviez-Hernandez v. Holder, ____ F.3d ____, 2013 WL 6230973, *2 n.1 (5th Cir. 2013).  As the government does not challenge Defendant's exhaustion argument, the Court treats it as excused.

**B.   The Categorical Approach**

To determine whether a state conviction constitutes an aggravated felony, courts use the "categorical approach" set forth in Taylor v. United States, 495 U.S. 575, 598 (1990).  Under that approach, the Court looks only to the fact of conviction and the elements of the alleged predicate offense to determine whether it satisfies the definition of the qualifying federal offense (i.e., whether it is an aggravated felony).  Taylor, 495 U.S. at 602.  "[I]f the statute sweeps more broadly than the generic crime, a conviction under that law cannot count as an ACCA predicate [or an aggravated felony], even if the defendant actually committed the offense in its generic form."  Descamps v. United States, 570 U.S. ___, 133 S. Ct. 2276, 2283-2285 (2013).  In other words, if the state statute lacks any element of the federal offense, the mismatch ends the inquiry because "a person convicted under that statute is never convicted of the generic crime."  United States v. Gomez, 732 F.3d 971 (9th Cir. 2013).  Assessing

whether a state statute is "overbroad" relative to the federal definition ought not be an exercise in creativity.  See Gonzales v. Duenas-Alvarez, 549 U.S. 183, 193, (2007) ("[T]o find that a state statute creates a crime outside the generic definition of a listed crime in a federal statute requires more than the application of legal imagination to a state statute's language. It requires a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime."); James v. United States, 550 U.S. 192, 208 (2007) ("We do not view [the categorical approach] as requiring that every conceivable factual offense covered by a statute must necessarily present a serious potential risk of injury before the offense can be deemed a violent felony.").

Sometimes the Court cannot determine, categorically, whether the crime of conviction constitutes an aggravated felony because the statute can be violated in multiple ways, not all of which would be aggravated felonies.  That situation may arise if the state statute of conviction is "divisible," i.e., it sets forth "multiple, alternative versions of the crime," thereby "effectively creat[ing] several different crimes."  Descamps, 570 U.S. at 2284-85 (citation omitted).  In that case, the Court may use the "modified categorical approach," examining certain "approved documents" in the record to determine what form of the crime the defendant was convicted of.[4]  Id. at 2284.

### III.  DISCUSSION

Defendant argues his conviction for attempted sexual abuse of a child in the third degree is not an aggravated felony under 8 U.S.C. § 1227(a)(2)(A)(iii).  The Court finds that the modified categorical approach is properly applied in this case, and that Defendant's conviction was for an aggravated felony.

**A.   The Modified Categorical Approach Applies to the Utah Attempt Statute, Utah Code § 76-4-101**

---

[4] "Approved documents" include the charging document, jury instructions, plea colloquy, plea agreement, judgment, and "any explicit factual finding by the trial judge to which the defendant assented." Shepard v. United States, 544 U.S. 13, 16, 20-21 (2005); Descamps, 133 S. Ct. at 2285 n.2.

Where a defendant is convicted of an attempt crime, the sentencing court must determine "whether the defendant's conviction establishes that he committed the elements of the generic definition of 'attempt' *and* that the underlying offense he attempted meets the generic definition of that offense." United States v. Gonzalez-Monterroso, No. 12-10158, ___ F.3d ___, 2014 WL 575952, *1 (9th Cir. 2014) (quoting United States v. Gomez-Hernandez, 680 F.3d 1171, 1175 (9th Cir. 2012)). The Utah attempt statute provides, in pertinent part:

> (1) For purposes of this part, a person is guilty of an attempt to commit a crime if he: (a) engages in conduct constituting a substantial step toward commission of the crime; and (b) (i) intends to commit the crime; or (ii) when causing a particular result is an element of the crime, he acts with an awareness that his conduct is reasonably certain to cause that result.
> (2) For purposes of this part, conduct constitutes a substantial step if it strongly corroborates the actor's mental state as defined in Subsection (1)(b).

Utah Code § 76-4-101. Defendant does not dispute that sections (1)(a) and (b)(1) of the Utah attempt statute are identical to the federal generic definition of attempt. (Mot. at 11.) He nonetheless argues that the statute was overbroad at the time of his plea. (Mot. at 11-12.) More specifically, he argues that an intervening judicial ruling temporarily rendered the Utah statute broader than the federal definition.[5]

Pointing to State v. Arave, 220 P.3d 182 (Utah App. 2009), Defendant argues that because solicitation was, "for the space of a couple years straddling Mr. Morales' plea," within the ambit of the Utah attempt statute, his conviction is based on a statute that sweeps too broadly in comparison with its federal counterpart. (Mot. at 11.) In

---

[5] To reach Defendant's argument, the Court assumes, without deciding, that Descamps applies retroactively such that it may support a collateral attack, and that the Court should consider state court interpretations of the statute of conviction. See Wilson v. Holland, 2014 U.S. Dist. LEXIS 16277, 2014 WL 517531, *3 (E.D. Ky. Feb. 10, 2014) ("there is no indication in . . . *Descamps* that the Supreme Court made those holdings retroactive to cases on collateral review"); Monroe v. United States, 2013 U.S. Dist. LEXIS 168904, 2013 WL 6199955 (N.D. Texas Nov. 26, 2013) (collecting cases) Strickland v. English, 2013 U.S. Dist. LEXIS 120457, 2013 WL 4502302, *8 (N.D. Fla. Aug. 22, 2013); Descamps, 133 S.Ct. 2276, 2291 (2013) (reserving ruling on the question of "whether, in determining a crime's elements, a sentencing court should take account not only of the relevant statute's text, but of judicial rulings interpreting it.")

Arave, the trial court found that Mr. Arave's conduct amounted to not just solicitation, but a "substantial step" in furtherance of the crime (sodomy of a child). 220 P.3d at 185-86.  Mr. Arave was thus convicted of attempted sodomy rather than solicitation.  The intermediate appellate court affirmed.  The Utah Supreme Court reversed, finding that Mr. Arave's conduct amounted to solicitation, and that mere solicitation is not a substantial step in furtherance of an attempt.  State v. Arave, 268 P.3d 163, 169-70 (Utah 2011).

Citing J.S v. P.K. (In re Adoption of I.K.), 220 P.3d 464 (Utah 2009), Defendant argues that the 2009 Arave decision was in force at the time of his plea, operating as an *ex post facto* judicial expansion of the scope of Utah's attempt statute. See generally Carmell v. Texas, 529 U.S. 513 (1999) (finding application of post-offense change in law reducing the quantum of evidence required for conviction to be an *ex-post facto* clause violation).  Thus, Defendant argues, this case is like United States v. Gonzales-Monterroso, 2014 WL 575952 (9th Cir. Feb. 14, 2014), where the Ninth Circuit ruled that a Delaware attempt statute was broader than generic federal attempt because its definition of a "substantial step" encompasses mere preparations. The federal generic definition, by contrast, requires a finding that an act was "of such substantiality that, unless frustrated, the crime would have occurred." United States v. Saavedra-Velazquez, 578 F.3d 1103, 1107 (9th Cir. 2009).

There are a few holes in Defendant's argument.  First, he provides no basis for his assumption that the law at the time of conviction is controlling.  By focusing on the time that the plea was entered, he ignores the fact that the substantive law at the time of the offense typically governs, even in Utah.  See, e.g., United States v. Sher, 421 F.2d 784, 786 (9th Cir. 1970) (applying the National Firearms Act "as it read at the time of the offense"); State v. Lafferty, 20 P.3d 342, 373 (Utah 2001) (upholding death sentence applying law, including the insanity defense, as it existed at the time of the offense).  The state of the law at the time of the plea or conviction is thus

irrelevant to the question of whether the conduct alleged was proscribed by a particular statute.

Defendant's argument implies that the immigration officers should review state court rulings *sua sponte* to ensure that the scope of the state statute has not been expanded. As Defendant points to no case where the law changed after the offense but before the conviction, as he alleges it did here, the Court rejects his argument as baseless.[6] See generally McNeill v. United States, ___ U.S. ___, 131 S. Ct. 2218, 2223 (2011) ("This natural reading of [the Armed Career Criminal Act] also avoids the absurd results that would follow from consulting current state law to define a previous offense.") (citing United States v. Wilson, 503 U.S. 329, 334 (1992) ("[A]bsurd results are to be avoided")); United States v. Turkette, 452 U.S. 576, 580 (U.S. 1981). Because the September 2009 ruling in Arave came after Defendant's July 2009 offense, it is irrelevant. Moreover, there is no indication that the scope of the statute under Arave was an issue at any point in this case. Additionally, Defendant misconstrues both of the opinions he relies upon. The full passage from In re I.K. reveals that Defendant overstates the temporary precedential effect of one intermediate appellate decision:

> When a case is granted *certiorari* review, it remains unresolved until the higher court takes final action. This is not to say that lower courts do not have the obligation to follow an intermediate appellate decision until it is reviewed. Indeed, "[w]hen the court of appeals renders a decision on an issue, that decision is automatically part of the law of this state, unless

---

[6] In a supplemental filing, Defendant cites McNeill v. United States, ___ U.S. ___, 131 S.Ct. 2218 (2011) for the proposition that immigration officers and sentencing courts must look to the law that applied at the time of conviction to determine whether it was for an aggravated felony. (Doc. 26.) McNeill concerned the maximum sentence applicable to a criminal statute, not what conduct was proscribed by it. The Court held that the plain language of the Armed Career Criminal Act sentencing enhancement provisions require sentencing courts to look to the maximum possible sentence at the time of prior convictions, as opposed to the present-day penalty. The case did not involve a change in the law between the time of the offense and the time of conviction. Indeed, Defendant's position is arguably inconsistent with McNeill, where the Court noted that its interpretation "permits a defendant to know even before he violates [18 U.S.C. § 922(g)] whether the ACCA would apply." McNeill, 131 S. Ct. at 2224.

> and until contravened by this court, the legislature, or the people through the processes authorized for the making of new law." *Grand County v. Rogers*, 2002 UT 25, P 16, 44 P.3d 734. Thus, a lower court is not free to act in opposition to a court of appeals decision simply because the decision is under review by a higher court. *See, e.g., Lakeside Cmty. Hosp. v. Tahoe Reg'l Planning Agency*, 461 F. Supp. 1150, 1153 (D. Nev. 1978) ("[T]his Court is duty bound to follow the law as articulated by the Court of Appeals for this Circuit. That a writ of certiorari has issued from the United States Supreme Court to the Court of Appeals does not relieve this Court of that duty." (internal citation omitted)). **However, once the *certiorari* review is complete and a decision is announced by the higher court, that new decision becomes the law in that case, replacing the decision announced by the intermediate court to the extent it reverses, vacates, or otherwise modifies it. The new ruling also has retroactive effect.** Thus, the decision of the court of appeals in *Helen G. I*, though binding on lower courts at the time it was announced, represented an intermediate step in a case that was not yet final. Now that certiorari review is complete, the decision of the supreme court in *Helen G. II* constitutes the binding rule of law.

In re I.K., 220 P.3d at 469 (emphasis added).  See also Rivers v. Roadway Express, Inc., 511 U.S. 298, 312-13 (1994) ("A judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction."); Id. n.12 ("[W]hen this Court construes a statute, it is explaining its understanding of what the statute has meant continuously since the date when it became law.")  Defendant asks the Court to ignore the retroactive effect of the Utah Supreme Court ruling in Arave reversing the expansive interpretation of "substantial step."  Indeed, although neither precedent existed at the time of the removal proceedings, Defendant asks the Court to ignore the Utah Supreme Court decision on one hand while applying Descamps retroactively on the other.  The Court declines to do so.

Finally, in his reply memorandum, Defendant relies upon the recent decision in Gonzales-Monterroso, to argue that the Utah attempt statute is indivisible and overbroad.  In Gonzales-Monterroso, the Ninth Circuit held that a subsection of the Delaware attempt statute was indivisible and overbroad.  ___ F.3d ___, 2014 WL 575952.  The ruling was based on Delaware's statutory definition of "substantial step," not upon an intervening judicial interpretation of the statute.  As Defendant

concedes, the attempt statute *sub judice* is coextensive with the federal generic definition. (See Mot. at 11.) The Court accordingly finds that the inchoate offense of conviction to be coextensive with federal generic attempt, and turns to the statute defining the underlying offense.

**B.   Sexual Abuse of a Child in the Third Degree Under Utah Code § 76-5-404.1 Is Not Categorically An Aggravated Felony**

Utah Code § 76-5-404.1, sexual abuse of a child, provides in pertinent part:

(1) As used in this section, "child" means a person under the age of 14.

(2) A person commits sexual abuse of a child if, under circumstances not amounting to rape of a child, object rape of a child, sodomy upon a child, or an attempt to commit any of these offenses, the actor touches the anus, buttocks, or genitalia of any child, the breast of a female child, or otherwise takes indecent liberties with a child, or causes a child to take indecent liberties with the actor or another with intent to cause substantial emotional or bodily pain to any person or with the intent to arouse or gratify the sexual desire of any person regardless of the sex of any participant.

In United States v. Tafoya-Montelongo, the Ninth Circuit held that a § 76-5-404.1 violation is not categorically an aggravated felony because the statute encompasses a broader range of conduct than the federal generic definition.[7] 659 F.3d 738, 743 (9th Cir. 2011). See also State v. Bishop, 753 P.2d 439 (Utah 1988) ("indecent liberty" need not include some touching of or by the victim). However, the Court also held that the modified categorical approach may be applied to determine whether a conviction under § 76-5-404.1 constitutes the generic federal offense of sexual abuse of a minor. Tafoya-Montelongo, 659 F.3d at 744.   Descamps does not change this since the statute, which sets forth multiple forms of proscribed conduct in the

---

[7] There are two federal generic definitions of *sexual abuse of a minor* as used in 8 U.S.C. § 1101(a)(43)(A) and U.S.S.G. § 2L1.2(b)(1)(A)(ii). In an *en banc* decision, the Ninth Circuit enumerated its elements in the context of statutory rape: "(1) a *mens rea* level of knowingly, (2) sexual act, (3) with a minor between the ages of 12 and 16, and (4) an age difference of at least 4 years between the defendant and the minor." Estrada-Espinoza v. Mukasey, 546 F.3d 1147, 1152 (9th Cir. 2008). A residual "sexual abuse of a minor" category applies where (1) the conduct is sexual, (2) the statute protects a minor, and (3) the statute requires abuse. United States v. Medina-Villa, 567 F.3d 507, 513 (9th Cir. 2009). Sexual contact with a victim under fourteen is *per se* "abuse." United States v. Lopez-Solis, 447 F.3d 1201, 1209 (9th Cir. 2006).

disjunctive, is plainly divisible. The Court therefore turns to the modified categorical approach to determine whether the proper record documents reveal whether the Defendant has an aggravated felony conviction.

### C. Defendant Was Convicted of an Aggravated Felony

Applying the modified categorical approach and looking at Defendant's plea agreement, it is clear that he pled guilty to a crime within the scope of the federal definition of attempted sexual abuse of a minor. It is undisputed that the statute protects a minor and that the victim was under age 14. In the supporting statement accompanying his plea, Defendant admitted: "On 7/1/09 at 2547 Parkcrest Drive in Salt Lake County, I touched the breast of T.M. (a female younger than age 14) to arouse my sexual desire." (Id. at 3.; Doc. 15-2.) This plainly satisfies the federal definition, as it constitutes sexual conduct, which, as mentioned *supra*, is *per se* abuse where the victim is under fourteen. Lopez-Solis, 447 F.3d at 1209.

### V. CONCLUSION

For the reasons stated, the Court finds that Defendant's conviction for attempted sexual abuse in the third degree is a conviction for an aggravated felony. The order of removal was therefore correct in that conclusion. Because he has demonstrated no due process violation with respect to his removal, Defendant's collateral attack fails. Accordingly, the Defendant's Motion to Dismiss the Information is **DENIED**.

**IT IS SO ORDERED.**

DATED: April 18, 2014

BARRY TED MOSKOWITZ
Chief Judge
United States District Court